UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
FARAMARZ NABATKHORIAN,

                         Plaintiff,

          -against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, DETECTIVE EDMUND
MORAN, in his individual and
official capacity, DETECTIVE
CHRISTOPHER FALTINGS, in his                    MEMORANDUM & ORDER
individual and official capacity,               12-CV-1118(JS)(GRB)
POLICE OFFICERS JOHN DOE 1-10, in
their individual and official
capacities (those being the names
of officers who were present and
committed wrongful acts and whose
names are known by the other
Defendants), NASSAU COUNTY OFFICE
OF THE DISTRICT ATTORNEY, DISTRICT
ATTORNEY KATHLEEN RICE, in her
individual and official capacity,
ASSISTANT DISTRICT ATTORNEY ELAN
SCHEFFLEIN, in his individual and
official capacity, KATRIN NABATKHORIAN,
ESKANDAR J. SIMHAEE, MD, RABBI
FARSHID (ISSAC) BAKHSI, RABBI ELIYAHU
BENCHAIM, NEGAR KOHANBACH PAKNOUSH,
and NAGHMEH SHAYE,

                         Defendants.
---------------------------------------X
APPEARANCES
For Plaintiff:      Frederick K. Brewington, Esq.
                    Brittney C. Russell, Esq.
                    Law Offices of Frederick K. Brewington
                    556 Peninsula Boulevard
                    Hempstead, NY 11550

For Defendants:
Nassau County       Ralph J. Reissman, Esq.
Defendants          Nassau County Attorney's Office
                    One West Street
                    Mineola, NY 11501

1

| | |
|---|---|
| Dr. Simhaee | Robert E. O'Connor, Esq.<br>O'Connor, O'Connor, Hintz & Deveny<br>One Huntington Quadrangle, Suite 1C07<br>Melville, NY 11747 |
| Rabbi Bakhsi | Matin Emouna, Esq.<br>Law Offices of Matin Emouna<br>110 Old Country Road, Suite 3<br>Mineola, NY 11501 |
| Rabbi BenChaim | David BenHaim, Esq.<br>Lipsius-BenHaim Law, LLP<br>80-02 Kew Gardens Road<br>Kew Gardens, NY 11415 |
| Ms. Paknoush | Donna E. Geoghan, Esq.<br>Kelly Rode & Kelly LLP<br>330 Old Country Road, Suite 305<br>Mineola, NY 11501 |
| Ms. Shaye | John Joseph Hopwood, Esq.<br>Karen M. Lager, Esq.<br>Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.<br>708 Third Avenue, Suite 2500<br>New York, NY 10017 |
| Katrin Nabatkhorian | No appearances. |

SEYBERT, District Judge:

Plaintiff Faramarz Nabatkhorian ("Plaintiff") commenced this action on March 7, 2012 asserting claims pursuant to 42 U.S.C. § 1983 against Nassau County (the "County"), the Nassau County Police Department, the Nassau County District Attorney's Office, and individual defendants Edmund Moran, Christopher Faltings, Kathleen Rice, and Elan Schefflein in their individual and official capacities (collectively, the "County Defendants"), and under New York common law against

Katrin Nabatkhorian, Eskandar J. Simhaee, MD,[1] Rabbi Farshid (Issac) Bakhsi, Rabbi Eliyahu BenChaim, Negar Kohanbash Paknoush, Naghmeh Shaye, and the County Defendants arising out of Plaintiff's arrest and prosecution for allegedly raping his wife, Defendant Katrin Nabatkhorian ("Katrin"). The following motions are pending before the Court: (1) Rabbi BenChaim's motion to dismiss for failure to state a claim (Docket Entry 4); (2) the County Defendants' motion to dismiss for failure to state a claim (Docket Entry 24); (3) Plaintiff's motion to amend his Complaint (Docket Entry 41); (4) Rabbi Bakhsi's motion to dismiss for failure to state a claim (Docket Entry 47); and (5) Plaintiff's motion for a default judgment against Katrin (Docket Entry 57), which was referred to Magistrate Judge Gary R. Brown for a report and recommendation.

For the following reasons, the County Defendants' motion to dismiss is GRANTED, Plaintiff's cross-motion to amend his Complaint is DENIED, the referral to Judge Brown is VACATED, and all remaining motions are DENIED AS MOOT.

---

[1] The Court notes that Dr. Simhaee's name is spelled incorrectly in the caption and intermittently throughout Plaintiff's pleadings. The Court has corrected the caption above to reflect the correct spelling. The Clerk of the Court is directed to amend the docket accordingly.

Plaintiff and Katrin were married on August 24, 2006 in Tehran, Iran and again on June 26, 2008 in Manhasset, New York. (Compl. ¶ 28; Am. Compl. ¶ 28.) The couple had marital problems, and in or around June 2009 Katrin sought counseling from her rabbi, Defendant Bakhsi. (Compl. ¶ 29; Am. Compl ¶ 29.) Plaintiff and Katrin met with Rabbi Bakhsi together,[3] once in early June and again on June 15, 2009. (Compl. ¶¶ 31-32; Am. Comp. ¶¶ 31-32.) Rabbi Bakhsi encouraged the couple to "work on their relationship, including intimacy," and suggested that they "go to a hotel." (Compl. ¶¶ 31-32; Am. Compl. ¶¶ 31-32.)

On June 16, 2009, Plaintiff and Katrin "spent time" at the Edgewood Motel in Jericho, New York. (Compl. ¶ 33; Am. Compl. ¶ 33.) The following day, Katrin went to see Defendant Simhaee, a doctor and a fellow of the American College of Obstetricians and Gynecologists, with her friend Defendant

---

[2] The following facts are drawn from the Original Complaint ("Compl.") and the Proposed Amended Complaint ("Am. Compl.") and the documents referenced therein or integral thereto and are presumed to be true for the purposes of this Memorandum and Order. Further, with the exception of five paragraphs, the factual allegations in the Original Complaint and the Proposed Amended Complaint are identical; therefore, the Court will summarize the allegations in both pleadings jointly.

[3] Rabbi Bakhsi allegedly harassed and threatened Plaintiff with divorce until he agreed to this meeting. (Compl. ¶¶ 29-30; Am. Compl. ¶¶ 29-30.)

Paknoush. (Compl. ¶ 34; Am. Compl. ¶ 34; Reissman Reply Decl. Ex. K.) Ms. Paknoush apparently told Dr. Simhaee's staff that Katrin had been raped by her husband. (Compl. ¶ 35; Am. Compl. ¶ 35.) According to Dr. Simhaee's records, Katrin did not disclose the rape to him until he questioned her about a tear in her perineal area. (Reissman Reply Decl. Ex. K.) Dr. Simhaee took pictures of the injury and advised Katrin to go to the police. (Reissman Reply Decl. Ex. K.) Katrin, however, did not report the incident to the police at that time.

Plaintiff asserts he did not rape his wife and that both Ms. Paknoush and Dr. Simhaee knew that Katrin was lying. (Compl. ¶¶ 35-36; Am. Compl. ¶¶ 35-36.) Plaintiff believes that Katrin obtained the "falsified medical report" so she could extort money from him. (Compl. ¶ 37; Am. Compl. ¶ 37.)

Later that summer, Plaintiff and Katrin moved to California and continued to work on their marriage. (Compl. ¶ 38; Am. Compl. ¶ 38.) However, in or around September 2009, Plaintiff decided that he wanted a divorce, so Katrin moved back to New York. (Compl. ¶ 38; Am. Compl. ¶ 38.) "[I]mmediately upon her return to New York," on September 7, 2009, Katrin went to the Nassau County Police Department to report that Plaintiff had been "verbally, physically, and sexually abusive" to her in

the past.  (Compl. ¶ 40; Am. Compl. ¶ 40; Reissman Decl. Ex. B.) [4] Katrin's statement was documented in a Domestic Incident Report (Compl. ¶ 40; Am. Compl. ¶ 40; Reissman Decl. Ex. B), and her case was referred to the "Special Victims" unit to take her statement.  (Reissman Decl. Ex. B.)

The following week, on or around September 16, 2009, Plaintiff and his brother met with non-party Rabbi Balaness who purportedly "attempted to extort money from Plaintiff" on behalf of Katrin.  (Compl. ¶ 41; Am. Compl. ¶ 41.)  Plaintiff refused to cooperate, and, the following day, Katrin filed a complaint in Nassau County Family Court "alleging that Plaintiff committed acts constituting menacing, assault, attempted assault, harassment and rape" and attached Dr. Simhaee's records. (Compl. ¶¶ 42-43; Am. Compl. ¶¶ 42-43.)  The Family Court issued her a temporary order of protection on September 18, 2009. (Compl. ¶ 42; Am. Compl. ¶ 42.)  On October 20, 2009, Katrin filed another complaint in Family Court, alleging that Plaintiff violated the order of protection.  (Compl. ¶ 44; Am. Compl. ¶ 44.)  Plaintiff asserts that he never violated the order of protection, and that Katrin filed a false complaint "[i]n a further attempt to gain advantage."  (Compl. ¶ 44; Am. Compl.

_____

[4] The Complaint and Proposed Amended Complaint both assert that Katrin went to the police on September 9, 2009; however, records from the Nassau County Police Department reveal that she reported Plaintiff on September 7, 2009.  This inconsistency is irrelevant for the purposes of this Memorandum and Order.

¶ 44.)  On or around October 21, 2009, both complaints were dismissed.  (Compl. ¶ 45; Am. Compl. ¶ 45.)

On or around January 5, 2010, Katrin returned to the Nassau County Police Department to provide a sworn statement regarding the alleged rape to Defendant Moran, a detective in the Department.  (Compl. ¶ 47; Am. Compl. ¶ 47.)  She stated, in relevant part, as follows:

> On June 16, 2009 at about 2:00 in the morning my husband drove me to the [REDACTED] and he went into the office and signed for a room and we were given [REDACTED].  When we went up to the room my husband opened the door and we went into the room.  I sat on the bed and my husband said to me come on to bed [sic] with me I love you.  I told him no, I said you don't love me you threw me out of the house for ten days and turned off my phone, you don't love me.  He then said lets [sic] not talk about that, he lay down on the bed and wanted to have sex with me.  He tried to hug and kiss me and I again told him no.  He took off his clothes and pushed me down onto the bed and he removed my clothing.  I kept saying no no [sic].  He said I'm your husband come have sex with me.  I couldn't stop him because I was afraid of him[;] he has hit me in the past and sexually abused me in the past and I knew that I couldn't stop him.  First while I was on the bed he grabbed me by the back of my head and pushed my head and mouth to his penis and forced me to perform oral sex on him.  He then got on top of me while I was on my back and forced me to have sex with him, I kept telling him no and to stop but he wouldn't listen.  He then got off of me and turned me over to I [sic] was on my knees and hands and he had sex with me from behind.  Since he was so abusive to me in the past I was afraid to use any physical

7

force against him to stop him, I only kept
telling him to stop. When he finished I
curled up in the bed and I went to sleep
because I was so tired from being on the
streets for the last ten days. My husband
also went to sleep. That morning of June 16
after leaving the motel I was in such pain
that I contacted a friend to take me to the
doctors. I went to Eskandar J. Simhaee
where he examined me and took photographs of
me. He gave me a copy of the medical report
and a CD with pictures on me [sic] on it[;]
I gave both to Det. Moran to help the
investigation. I did not give my husband,
Faramarz Nabatkhorian permission to have sex
with me and I want him arrested.

(Reissman Decl. Ex. C; see also Compl. ¶ 47; Am. Compl. ¶ 47.)

Plaintiff was arrested on March 11, 2010 and charged
with Rape in the First Degree and Criminal Sexual Act in the
First Degree in violation of N.Y. PENAL LAW §§ 130.35, 130.50.
(Compl. ¶ 48; Am. Compl. ¶ 50; Reissman Decl. Ex. D.) Detective
Moran prepared the felony complaints and provided the following,
sworn statement in support:

Your deponent, Detective Edmund Moran,
states that at the time and place aforesaid,
based upon information and belief, source of
said information and belief is through
interviews with the victim, medical
examination report, CD pictures of the
victims [sic] vaginal injuries, and the
receipt from the [REDACTED], the defendant,
Faramarz Nabatkhorian D.O.B. 01/14/66, did
use physical force against the victim
[REDACTED] and forced his erect penis into
the victims [sic] vagina while holding the
victim down against her will and the victim
continually told the defendant to stop and
told him no.

(Reissman Decl. Ex. D; see also Compl. ¶ 48; Am. Compl. ¶ 50.) Plaintiff asserts that Detective Moran's statement was "based on the false statements complaints and/or reports of Defendants Mrs. Nabatkhorian, Pakhoush, and Simahee [sic]," and that Detective Moran "knew or should have known" that such information was "false[] and fraudulent." (Compl. ¶ 48; Am. Compl. ¶ 50.)

Plaintiff was arraigned on March 12, 2010 and served with a temporary order of protection, which required him to stay away from Katrin and refrain from communicating with her "in any way, directly or indirectly." (Compl. ¶ 49; Am. Compl. ¶ 51; Reissman Decl. Ex. E.) At some unspecified time thereafter, Plaintiff was informed by "relatives" that Katrin, Defendant Rabbi BenChaim, and non-party Rabbi Balaness were "conspiring" to file false criminal charges against Plaintiff unless he paid them "a large sum of money." (Compl. ¶¶ 50-51; Am. Compl. ¶¶ 52-53.) Plaintiff informed the Nassau County District Attorney's Office (the "DA's Office") of Katrin's attempts to extort money from him, and, at the suggestion of Defendant Schefflein, an assistant district attorney ("ADA") in the DA's Office, he recorded a conversation he had with Rabbi BenChaim where the Rabbi, "acting on behalf of Mrs. Nabatkhorian, attempted to extort money from Plaintiff." (Compl. ¶¶ 52-53;

Am. Compl. ¶¶ 54-55.)  Plaintiff provided ADA Schefflein with a copy of the recording.  (Compl. ¶ 53; Am. Compl. ¶ 55.)

Plaintiff refused to pay Katrin or Rabbi BenChaim any money, and, on June 28, 2010, Plaintiff was arrested by Defendant Faltings, a detective in the Nassau County Police Department, and charged with Criminal Contempt in the Second Degree and Tampering with a Witness in the Fourth Degree in violation of N.Y. PENAL LAW §§ 215.50(2), 215.10.  (Compl. ¶ 54; Am. Compl. ¶ 56; Reissman Decl. Ex. I.)  These charges were based on two sworn statements that Katrin provided to the Nassau County Police Department.  (Compl. ¶ 55; Am. Compl. ¶ 57; Reissman Decl. Exs. F, G.)  First, on June 25, 2010, she accused Plaintiff of violating the order of protection, stating, under penalty of perjury, as follows:  "I received approximately ten phone calls from my Rabbi Ebraheim Benkheam telling me my husband wanted to offer me $200,000 USC in order for me to drop criminal charges against him.  He told me to meet him and my husband at the Mashady Temple in Great Neck on June 25, 2010 to discuss the situation."  (Reissman Decl. Ex. F; see also Compl. ¶ 55; Am. Compl. ¶ 57.)[5]  Then, on June 26, 2010, she reported,

_____

[5] The Court notes that the Complaint and Amended Complaint assert that Defendant Eliyahu BenChaim made the phone calls, not Ebraheim Benkheam as stated in the District Court Informations. However, "[t]he Court need not accept as true allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice."  In re

again under penalty of perjury, that she received another phone call from Rabbi Benkheam trying to set up a meeting for the "cash exchange." (Reissman Decl. Ex. G.) Rabbi Benkheam is not a party to this action.

Detective Faltings prepared the District Court Informations and provided a sworn statement in support, stating that the charges were "based upon information and belief, the source of said information and belief being the statements of the victim [REDACTED], and Nassau County Criminal Court order of protection [REDACTED]." (Reissman Decl. Ex. H.) The case was prosecuted by ADA Schefflein, until the DA's Office dismissed all charges against Plaintiff on or around August 23, 2010. (Compl. ¶¶ 56-57; Am. Compl. ¶¶ 58, 62.)

Plaintiff asserts that Katrin "continue[d] to harass, harm and abuse" him by: (1) having a "fraudulent Power of Attorney drawn up[] and certified by Defendant BenChaim, allowing her to fraudulently file a bill of divorce" which would entitle her to "a large sum of money" (Compl. ¶ 58; Am. Compl. ¶ 63); (2) "attempt[ing] to induce Plaintiff to lie about their divorce to retain permanent residency status" (Compl. ¶ 59; Am. Compl. ¶ 64); (3) "acting irrationally" in front of his home with Defendants Pakhoush and Shaye and, after the police

---

MBIA, Inc., Sec. Litig., 700 F. Supp. 2d 566, 576 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).

arrived, accusing Plaintiff and his family of "rape and maltreatment" (Compl. ¶ 61; Am. Compl. ¶ 66); and (4) attempting to have his sister arrested (Compl. ¶ 62; Am. Compl. ¶ 67).

Plaintiff commenced this action on March 7, 2012, asserting claims for false arrest, malicious prosecution, and abuse of process against the County Defendants pursuant to 42 U.S.C. § 1983, a claim for fraud against Katrin under New York common law, and claims for aiding and abetting and conspiracy to commit fraud against all Defendants.  The County Defendants and Rabbis Bakhsi and BenChaim have all moved to dismiss the Complaint.  (Docket Entries 4, 24, 47.)  Dr. Simhaee, Ms. Paknoush, and Ms. Shaye have all answered the Complaint; Dr. Simhaee and Ms. Shaye have filed cross-claims against the other defendants for contribution, and Katrin has defaulted.  (Docket Entries 19, 22, 29, 56.)  Plaintiff has filed a motion to amend the Complaint and a motion for a default judgment against Katrin.  (Docket Entries 41, 57.)  The motion for a default judgment was referred to Magistrate Judge Gary R. Brown for a Report and Recommendation on January 9, 2013.  (Docket Entry 58.)  All motions are currently pending.

<u>DISCUSSION</u>

The Court will address the motions to dismiss and Plaintiff's motion to amend in that order.

12

I.   Motions to Dismiss

     A.   Standard of Review under Rule 12(b)(6)

          In deciding Rule 12(b)(6) motions to dismiss, the
Court applies a "plausibility standard," which is guided by
"[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662,
678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed.
2d 929 (2007)); see also Harris v. Mills, 572 F.3d 66, 72 (2d
Cir. 2009). First, although the Court must accept all of a
complaint's allegations as true, this "tenet" is "inapplicable
to legal conclusions;" thus, "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." Iqbal, 556 U.S. at 678 (citing
Twombly, 550 U.S. at 555); accord Harris, 572 F.3d at 72.
Second, only complaints that state a "plausible claim for
relief" survive a motion to dismiss. Id. at 679 (citing
Twombly, 550 U.S. at 556). Determining whether a complaint does
so is "a context-specific task that requires the reviewing court
to draw on its judicial experience and common sense." Id.;
accord Harris, 572 F.3d at 72.[6]

_____

[6] The Court notes that Plaintiff has applied the wrong standard
of review in his oppositions to the motions to dismiss. The
Supreme Court's recent decisions in Iqbal and Twombly govern the
sufficiency of pleadings; yet Plaintiff relies on the Court's
now-outdated decision in Conley v. Gibson, 355 U.S. 41, 78 S.
Ct. 99, 2 L. Ed. 2d 80 (1957).

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-52 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991). Consideration of matters beyond those just enumerated requires the conversion of the Rule 12(b)(6) motion to dismiss into one for summary judgment under Rule 56. See FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); see also Kramer, 937 F.2d at 773.

Here, the Court may consider the following documentary evidence without converting the motions into motions for summary judgment: statements that Katrin made to the Nassau County Police Department (Reissman Decl. Exs. B, C, F, G), Dr. Simhaee's medical records (Reissman Reply Decl. Ex. K), the felony complaints and informations (Reissman Decl. Exs. D, H), and the order of protection from the criminal court (Reissman

Decl. Ex. E).  These documents were all specifically referenced in the Complaint and were integral to the preparation thereof. (Compl. ¶¶ 36-37 (referring to Dr. Simhaee's medical report); id. ¶¶ 40, 47, 55 (referring to Katrin's statements to the police); id. ¶¶ 48, 54 (referring to the felony complaints and informations); id. ¶ 49 (referring to the order of protection).)

B. The County Defendants' Motion to Dismiss

As an initial matter, Plaintiff concedes that all claims against the DA's Office and the Nassau County Police Department must be dismissed because they are not suable entities and that the state law claims against the County Defendants must be dismissed because Plaintiff failed to file a notice of claim.  (Pl. Opp., Docket Entry 30, at 1.) Accordingly, these claims are hereby DISMISSED.

The Court will address the remaining Section 1983 claims in the following order:  first the official capacity claims against Nassau County District Attorney Kathleen Rice, ADA Schefflein, and Detectives Moran and Faltings (the "Individual County Defendants") then the individual capacity claims against the Individual County Defendants, and finally the claims against the County.

1. Official Capacity Claims

Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an

officer is an agent,'" <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (quoting <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)), and courts routinely dismiss official-capacity claims where the plaintiff also sues the municipality, <u>see,</u> <u>e.g.</u>, <u>Thomas v. Venditto</u>, --- F. Supp. ----, 2013 WL 653962, at *9 (E.D.N.Y. Feb. 21, 2013); <u>Volpe v. Nassau Cnty.</u>, --- F. Supp. 2d ----, 2013 WL 28561, at *13 (E.D.N.Y. Jan. 3, 2013). Accordingly, the Section 1983 claims against the Individual County Defendants in their official capacities are hereby DISMISSED.

    2.  <u>Individual Capacity Claims</u>

        a.  <u>Against Kathleen Rice</u>

The County Defendants argue that the claims against Kathleen Rice must be dismissed because the Complaint is devoid of any allegations that she was personally involved in the alleged constitutional violations. The Court agrees. "'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) (quoting <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, "a plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

Here, the only allegation in the Complaint against Kathleen Rice is that she "was and is an elected official with final government authority to establish municipal policy who personally selected, supervised, had direct knowledge of, participated in and was directly responsible for the actions of all employees and/or agents of Defendant DA's Office." (Compl. ¶ 12.) However, there is no respondeat superior liability under Section 1983; therefore, Kathleen Rice cannot be held liable solely because of her supervisory role. See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) ("[S]upervisor liability in a § 1983 action . . . cannot rest on respondeat superior."); Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) (finding that a supervisor will be held liable under Section 1983 only if he "participated in the alleged violation or had a hand in creating a policy or custom under which the unconstitutional practices occurred"). The remaining conclusory allegations are not supported by a single fact suggesting personal involvement, and thus they are "not entitled to the assumption of truth." Iqbal, 556 U.S. at 680.[7] Accordingly, the claims against Kathleen Rice are hereby DISMISSED.

---

[7] To the extent that Plaintiff seeks to rely on allegations against the "County Defendants" generally to hold Kathleen Rice

b. <u>ADA Schefflein</u>

The County Defendants argue that the claims against ADA Schefflein are barred by absolute prosecutorial immunity. The Court agrees. "It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." <u>Shmueli v. City of N.Y.</u>, 424 F.3d 231, 236 (2d Cir. 2005) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 410, 431, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)) (internal quotation marks omitted). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" <u>Hill v. City of N.Y.</u>, 45 F.3d 653, 661 (2d Cir. 1995) (alteration in original) (quoting <u>Dory v. Ryan</u>, 25 F.3d 81, 83 (2d Cir. 1994)); see <u>also</u> <u>Shmueli</u>, 424 F.3d at 237 ("[A] defendant's motivation in performing such advocative functions to prosecute is irrelevant to the application of absolute immunity."). Here, Plaintiff's claims against ADA Schefflein all arise out of his prosecuting Plaintiff for violating the order of protection. (<u>See</u> Compl. ¶ 56 (stating that ADA Schefflein prosecuted Plaintiff despite

_____

personally liable (Pl. Opp., Docket Entry 30, at 29), such group pleading is insufficient to survive a motion to dismiss. <u>See</u> <u>Thomas</u>, 2013 WL 653962, at *8 (citing <u>Bertuglia v. City of N.Y.</u>, 839 F. Supp. 2d 703, 723 n.4 (S.D.N.Y. 2012)).

his knowledge that Katrin was trying to extort money from him).)[8]

Such claims are clearly within the scope of the immunity.  See,
e.g., Marczeski v. Handy, 213 F. Supp. 2d 135, 141 (D. Conn.
2002) (finding that a prosecutor's commencing a criminal
prosecution without investigating claims of wrongdoing by the
complainants was protected by absolute immunity).  Accordingly,
the claims against ADA Schefflein are hereby DISMISSED.

### c.  Against Detectives Moran and Faltings

Plaintiff's Complaint asserts three distinct claims
under Section 1983 against Detectives Moran and Faltings:  abuse
of process, malicious prosecution, and false arrest.[9]

### i.  Abuse of Process

"In order to establish liability for malicious abuse
of process under § 1983, a plaintiff must establish the claim's
elements under state law as well as the deprivation of a

---

[8] Plaintiff appears to be arguing in his opposition that his
claims against ADA Schefflein arise out of his instructing
Plaintiff to record conversations with Rabbi BenChaim.  However,
ADA Schefflein's investigating a potential crime committed
against Plaintiff, while arguably not protected by prosecutorial
immunity, does not give rise to a claim for malicious
prosecution, false arrest, or abuse of process.

[9] The Complaint also mentions equal protection and the Fifth and
Sixth Amendments to the U.S. Constitution.  However, Plaintiff
did not mention any of these claims in his oppositions to the
pending motions to dismiss; therefore, the Court deems them
abandoned and will not discuss them herein.  See McDonald v.
City of N.Y., 786 F. Supp. 2d 588, 613 (E.D.N.Y. 2011)
(dismissing claims as abandoned that were not mentioned in the
plaintiff's opposition to a motion for summary judgment).

constitutional right." Hoffman v. Town of Southampton, --- F.
Supp. 2d ----, 2012 WL 4465779, at *8 (E.D.N.Y. Sept. 28, 2012)
(citing Cook v. Sheldon, 41 F.3d 73, 79-80 (2d Cir. 1994)); see
also Savino v. City of N.Y., 331 F.3d 63, 76-77 (2d Cir. 2003).
To state a claim for abuse of process in New York, a plaintiff
must plead that the defendant:  "(1) employs regularly issued
legal process to compel performance or forbearance of some act
(2) with intent to do harm without excuse o[r] justification,
and (3) in order to obtain a collateral objective that is
outside the legitimate ends of the process."  Savino, 331 F.3d
at 76 (alteration in original) (quoting Cook, 41 F.3d at 80)
(internal quotation marks omitted).  The County Defendants argue
that Plaintiff's abuse of process claims must be dismissed
because Plaintiff has not pled that either Detective Moran or
Detective Faltings had a collateral purpose in arresting him.[10]
The Court agrees.

       To satisfy the "collateral objective" element of a
claim for abuse of criminal process, "it is not sufficient for a
plaintiff to allege that the defendants were seeking to
retaliate against him by pursuing his arrest and prosecution.
Instead, he must claim that they aimed to achieve a collateral

---

[10] It is worth noting that, although Plaintiff lists and defines
all three elements of an abuse of process claim in his
opposition brief, he only claims to have "satisfied the first
two elements."  (Pl. Opp., Docket Entry 30, at 21.)

purpose beyond or in addition to his criminal prosecution." Id. at 77.

Although extortion and blackmail are considered collateral objectives, see Brandon v. City of N.Y., 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010) (citing Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 404, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975)), there are no allegations in the Complaint that would plausibly suggest that either Detective Moran or Detective Faltings had such a motive.[11] Rather, the Complaint states that the abuse of process was caused by the County Defendants' collective failure to adequately investigate the allegedly false charges made against him. (Compl. ¶ 72.) However, this exact argument was explicitly rejected in Cabble v. City of New York, No. 04-CV-9413, 2009 WL 890098, at *4 (S.D.N.Y. Mar. 30, 2009)--a case cited repeatedly by Plaintiff in his opposition brief (Pl. Opp., Docket Entry 30, at 20-21). Accordingly, the Court finds that Plaintiff has failed to state a claim for abuse of process against Detectives Moran and Faltings, and those claims are hereby DISMISSED.

---

[11] The Complaint does not even suggest that Detectives Moran and Faltings knew that Katrin had such a motive. (See Compl. ¶¶ 52-53, 56 (stating that only the DA's Office and ADA Schefflein were aware of Katrin's extortion attempts).)

ii.  False Arrest and Malicious Prosecution

The County Defendants argue that the false arrest and malicious prosecution claims must be dismissed because there was probable cause for Plaintiff's arrest and prosecution or, in the alternative, because Detectives Moran and Faltings are protected by qualified immunity.  The Court agrees.

Lack of probable cause is an essential element of claims for false arrest and malicious prosecution under Section 1983.  See Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest."); Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995) (stating that a plaintiff suing for malicious prosecution must establish, inter alia, "lack of probable cause for commencing the proceeding"). Probable cause for arrest exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  A finding of probable cause to arrest will also "defeat[] a malicious prosecution claim unless [the] plaintiff can demonstrate that at some point subsequent to the arrest, additional facts came to light that negated probable

cause." Coyle v. Coyle, 354 F. Supp. 2d 207, 213 (E.D.N.Y. 2005) (internal quotation marks and citation omitted).

If, on the other hand, it has been conceded or established that the officers arrested the plaintiff without a warrant and without probable cause, a defendant is entitled to qualified immunity if there was "arguable probable cause" to arrest. See Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007); Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Escalera, 361 F.3d at 743 (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)); see also Cerrone v. Brown, 246 F.3d 194, 202-03 (2d Cir. 2001) ("Arguable probable cause exists when 'a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law.'" (quoting Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997)).

There are two separate arrests at issue here: the March 11, 2010 arrest arising out of Katrin's rape allegations and the June 28, 2010 arrest for allegedly violating the order of protection. The Court will address each arrest separately.

The County Defendants argue that Detective Moran had, at a minimum, arguable probable cause to arrest Plaintiff for rape based on Katrin's sworn statement and Dr. Simhaee's medical records.  The Court agrees.  "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995); see also Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) ("It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." (internal quotation marks and citations omitted)).   Thus, Katrin's sworn statement to Detective Moran that she had been raped by Plaintiff (Reissman Decl. Ex. C; Compl. ¶ 47) was sufficient to lead a reasonable police officer to conclude that there was probable cause for Plaintiff's arrest.

Although, as Plaintiff argues, a delay in reporting the crime may affect the probable cause determination, see Cornett v. Brown, No. 04-CV-0754, 2007 WL 2743485, at *6 (E.D.N.Y. Sept. 17, 2007) (stating that a "complainant's delay

in reporting a crime is a factor for determining the complainant's truthfulness" and is thus relevant to the court's probable cause determination (collecting cases)); the Court finds that reasonable officers could disagree over whether an alleged victim's failure to promptly report that her husband raped her defeats probable cause, cf. People v. Rosario, 17 N.Y.3d 501, 519, 934 N.Y.S.2d 59, 70, 958 N.E.2d 93, 104 (2011) ("It is now well-known that, in many cases, it is difficult for the victim to report the crime or to accuse her attacker. And delayed reporting [is] often understandable . . . ."); People v. Taylor, 75 N.Y.2d 277, 278, 552 N.Y.S.2d 883, 890, 552 N.E.2d 131, 138 (1990) (noting that "a rape victim who knows her assailant is more fearful of disclosing his name to the police and is in fact less likely to report the rape at all" and thus a victim's delay in reporting may not be inconsistent with her claim that she was raped); People v. Liberta, 64 N.Y.2d 152, 166 n.8, 485 N.Y.S.2d 207, 214 n.8, 474 N.E.2d 567, 574 n.8 (1984) ("The stigma and other difficulties associated with a woman reporting a rape and pressing charges probably deter most attempts to fabricate an incident . . . ."). Further, Katrin's sworn statement was corroborated, in part, by Dr. Simhaee's medical report, which documented injuries consistent with rape as well as Katrin's allegation of rape. Accordingly, the Court

finds that, based on the allegations in the Complaint, there was arguable probable cause to arrest Plaintiff for rape.

Thus, Plaintiff's claims against Detective Moran for false arrest and malicious prosecution are barred by qualified immunity[12] and are hereby DISMISSED.

(b)  <u>Detective Falting's June 28 Arrest</u>

With respect to Plaintiff's arrest for allegedly violating the order of protection, the County Defendants argue that Detective Faltings also had, at a minimum, arguable probable cause to arrest Plaintiff based on Katrin's sworn statements.  The Court again agrees.  Katrin's statements are sufficient to establish probable cause.  <u>See</u> <u>supra</u> pp. 23-24. And the Complaint is void of any allegations suggesting that Detective Faltings was aware of Katrin's attempts to extort money from Plaintiff.  <u>See</u> <u>supra</u> note 10; <u>see</u> <u>also</u> <u>Zellner</u>, 494 F.3d at 369 ("'Whether probable cause exists depends upon the reasonable conclusion to be drawn from <u>the facts known to the arresting officer at the time of the arrest</u>.'" (emphasis added) (quoting <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004)); <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 162 (2d Cir. 2002).  Instead, Plaintiff argues that Detective

---

[12] "The Court may grant a motion to dismiss on qualified immunity grounds where the defense is based on facts that appear on the face of the complaint."  <u>K.D. ex rel. Duncan v. White Plains Sch. Dist.</u>, --- F. Supp. ----, 2013 WL 440556, at *10 (S.D.N.Y. Feb. 5, 2013).

Faltings is liable because he "utterly failed to even make the most cursory investigation prior to arresting Plaintiff." (Pl. Opp., Docket Entry 30, at 15.) This is an incorrect statement of law. "[T]he failure to make a further inquiry <u>when a reasonable person would have done so</u> may be evidence of lack of probable cause." <u>Manganiello v. City of N.Y.</u>, 612 F.3d 149, 161 (2d Cir. 2010) (emphasis added) (internal quotation marks and citation omitted). Here, because Detective Faltings was not aware of any facts that would cause him to question Katrin's credibility, he was not required to investigate further. <u>See</u> <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); <u>see</u> <u>also</u> <u>Krause v. Bennett</u>, 887 F.2d 362, 371 (2d Cir. 1989) ("[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful. It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation." (internal quotation marks and citation omitted)). Accordingly, the Court finds that Plaintiff has failed to plausibly plead a lack of probable cause, and the false arrest and malicious prosecution claims against Defendant Faltings are hereby DISMISSED.

3.  <u>Claims Against the County</u>

"A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees." <u>Sorlucco v. N.Y.C. Police Dep't</u>, 971 F.2d 864, 870 (2d Cir. 1992).  Rather, in order to prevail on a Section 1983 claim against a municipality, a plaintiff must plead and prove that the unconstitutional acts of its employees are attributable to a municipal policy or custom. <u>See</u> <u>Monell</u>, 436 U.S. at 690. To plead an official policy or custom, a complaint must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact."

<u>Moray v. City of Yonkers</u>, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citing <u>Monell</u>, 436 U.S. at 690-91; <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483-84, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); <u>City of Canton v. Harris</u>, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)); <u>accord</u> <u>Lewis v. City of</u>

N.Y., No. 04-CV-5655, 2009 WL 935955, at *4 (E.D.N.Y. Mar. 31, 2009).

Here, the Complaint seeks to hold the County liable for failing to properly train and/or supervise Detectives Moran and Faltings and unnamed John Doe officers. (Compl. ¶ 3.) As an initial matter, "a municipality cannot be held liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights." Curley v. Vill. of Suffern, 268 F.3d 65, 71 (2d Cir. 2001). Therefore, as Plaintiff failed to plead that Detective Faltings violated Plaintiff's constitutional rights, the County cannot be held liable for failing to train or supervise Detective Faltings. With respect to Detective Moran's actions, "[t]he mere fact that [Plaintiff] was falsely arrested, without more, does not show that the [County]'s training program is inadequate. A training program is not inadequate merely because a few of its graduates deviate from what they were taught." Jenkins v. City of N.Y., 478 F.3d 76, 95 (2d Cir. 2007). And, here, Plaintiff has failed to plead any "facts suggesting that the constitutional deprivations [he] suffered were the consequence of training or supervisory deficiencies." Marte v. N.Y.C. Police Dep't, No. 10-CV-3706, 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010). Conclusory allegations of inadequate training or supervision, like those alleged here, will not

survive a motion to dismiss.  See Triano v. Town of Harrison, --
- F. Supp. 2d ----, 2012 WL 4474163, at *11 (S.D.N.Y. Sept. 26,
2012) (collecting cases).

Accordingly, Plaintiff's claims against the County are
hereby DISMISSED.

C.    The Rabbis' Motions to Dismiss

All that remains in the Complaint are Plaintiff's New
York State fraud claims.  However, under Carnegie–Mellon
University v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L.
Ed. 2d 720 (1988), a federal court should generally decline to
exercise supplemental jurisdiction over state law claims if, as
is the case here, the complaint asserts federal question
jurisdiction but not diversity jurisdiction, and the complaint's
federal claims are dismissed in the litigation's "early stages."
See also 28 U.S.C. § 1367(c)(3).  Accordingly, the Court
declines to exercise supplemental jurisdiction over Plaintiff's
state law claims, and they are hereby DISMISSED WITHOUT
PREJUDICE.  Therefore, the Rabbis' motions to dismiss are DENIED
AS MOOT, the Court's referral of Plaintiff's motion for default
judgment is VACATED, and that motion is also DENIED AS MOOT.

II.  Motion to Amend

Also pending before the Court is Plaintiff's motion to
amend his Complaint.  Plaintiff seeks leave to add claims
against Katrin, Dr. Simhaee, Rabbis Bakhsi and BenChaim, Ms.

Paknoush, and Ms. Shaye (the "Private Party Defendants")
pursuant to Section 1983 for abuse of process, false arrest, and
malicious prosecution. The Court will first discuss the
applicable standard of review before addressing the merits of
Plaintiff's motion.

A.    Standard of Review under Rule 15

Courts should grant leave to amend "when justice so
requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be
granted unless there is evidence of undue delay, bad faith,
undue prejudice to the non-movant, or futility. See Milanese v.
Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). To
determine whether an amended claim is futile, courts analyze
whether the proposed pleading would withstand a motion to
dismiss under Federal Rule of Civil Procedure 12(b)(6). See
Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282
F.3d 83, 88 (2d Cir. 2002).

Thus, as an initial matter, to the extent that
Plaintiff seeks to replead claims against the County Defendants,
Plaintiff's motion is DENIED. The factual allegations against
the County Defendants in the Proposed Amended Complaint are
identical to the allegations in the Original Complaint;
therefore, such amendment would be futile. Whether Plaintiff
may plead new Section 1983 claims against the Private Party
Defendants warrants more discussion.

B.  Claims Against the Private Party Defendants

To state a claim under Section 1983, a plaintiff must "'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999); see also Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010).  The Private Party Defendants[13] argue that Plaintiff has failed to plead that they were acting under color of state law.  The Court agrees.

Only in limited circumstances will courts recognize that a private individual may be subject to liability under Section 1983.  Plaintiff here alleges that the Private Party Defendants acted under color of state law by conspiring with the County Defendants.[14]  "To state a claim against a private entity

_____

[13] Only Rabbi BenChaim and Dr. Simhaee have filed oppositions to Plaintiff's motion to amend.  However, their arguments apply equally to the Section 1983 claims against all of the Private Party Defendants.

[14] There are actually two ways in which a private actor can act "under color of state law" for the purposes of Section 1983: (1) by "willful[ly] participa[ting] in joint activity with the State or its agents," Spear v. Town of W. Hartford, 954 F.2d 63, 68 (2d Cir. 1992) (internal quotation marks and citation omitted), or (2) by conspiring with a state official to violate the plaintiff's constitutional rights, see Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002).  Although it is unclear from the Proposed Amended whether Plaintiff seeks to hold the Private Party Defendants liable under a joint action or conspiracy theory of liability, Plaintiff clarifies in his

on a section 1983 conspiracy theory, the complaint must allege
facts demonstrating that the private entity acted in concert
with the state actor to commit an unconstitutional act."
Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324 (2d Cir. 2002)
(internal quotation marks and citation omitted); see also
Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (stating
that a Section 1983 conspiracy requires (1) an agreement between
state and private actors; "(2) to act in concert to inflict an
unconstitutional injury; and (3) an overt act done in
furtherance of that goal causing damages"). "A merely
conclusory allegation that a private entity acted in concert
with a state actor does not suffice to state a Section 1983

---

motion papers that he is only asserting a Section 1983
conspiracy claim against the Private Party Defendants. (Pl.
Reply, Docket Entry 49, at 7; Pl. Reply, Docket Entry 50, at 6.)
Accordingly, the Court will limit its analysis to whether
Plaintiff has stated a Section 1983 conspiracy claim.

The Court notes, however, that even if Plaintiff was asserting a
"joint activity" theory of liability, he has failed to state a
claim because "the summoning of police officers or the provision
of information to police officers, even if that information is
false or results in the officers taking affirmative action, is
not sufficient to constitute joint action with state actors for
purposes of Section 1983." Young v. Suffolk Cnty., --- F. Supp.
2d ----, 2013 WL 491982, at *13 (E.D.N.Y. February 11, 2013)
(collecting cases). Rather, "it is only when a private actor
takes a more active role and jointly engages in action with
state actors, that he will be found to have acted under color of
state law for purposes of Section 1983." Id. As there are no
allegations in the Proposed Amended Complaint of any joint
activity, Plaintiff's claim would fail as a matter of law.

claim against the private entity." <u>Ciambriello</u>, 292 F.3d at 324; <u>see also</u> <u>Spear</u>, 954 F.2d at 68.

Here, there are two potential conspiracies that are worthy of discussion:   (1) a conspiracy between Katrin, Dr. Simhaee, Ms. Paknoush, and Detective Moran to frame Plaintiff for rape and (2) a conspiracy between Katrin, Rabbi BenChaim, and ADA Schefflein to extort money from Plaintiff.[15]

With respect to the alleged conspiracy regarding Plaintiff's arrest for rape, the Court finds that Plaintiff has not adequately pled that there was an agreement between state and private actors.   Instead, the Proposed Amended Complaint states that there was an agreement between Katrin, Ms. Paknoush, and Dr. Simhaee to provide false information to the police regarding Katrin's alleged rape.   (Am. Compl. ¶ 47.)   There is nothing in the pleading to suggest that Detective Moran was aware of the alleged conspiracy.   Thus, as Plaintiff has

_____

[15] The Court notes that these alleged conspiracies were not specifically articulated in either the Proposed Amended Complaint or Plaintiff's motion papers.   Instead, the Proposed Amended Complaint conclusorily states that <u>all</u> Defendants "willfully collaborated" to deprive Plaintiff of his constitutional rights.   Such a conclusory allegation would not survive a motion to dismiss.

Although the Court is not required to liberally construe the proposed pleading because it was drafted by counsel, <u>see</u> <u>In re</u> <u>Dayton</u>, 786 F. Supp. 2d 809, 811 n.1 (S.D.N.Y. 2011) (noting that pleadings submitted by lawyers are not entitled to the less stringent standards and liberal interpretations afforded to pleadings drafted by <u>pro</u> <u>se</u> parties), it does so here, in an abundance of caution.

"fail[ed] to plead an essential element for a civil rights conspiracy claim against private parties under 42 U.S.C. § 1983, namely a co-conspiring state agent," Srubar v. Rudd, Rosenberg, Mitofsky & Hollender, 875 F. Supp. 155, 164 (S.D.N.Y. 1994), such a conspiracy claim would not survive a motion to dismiss.

With respect to the alleged conspiracy regarding the attempts to extort money from Plaintiff, the Proposed Amended Complaint is similarly deficient. First, a conspiracy to violate state law is not cognizable under Section 1983. See Hansel v. Brazell, 85 F. App'x 237, 238 (2d Cir. 2004) ("Section 1983 cannot be used as redress for a violation of state law." (citing Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993)). Second, to the extent that Plaintiff is asserting that Katrin, Rabbi BenChaim, and ADA Schefflein conspired to arrest and prosecute Plaintiff for violating the order of protection without probable cause, the Proposed Amended Complaint is lacking any allegations that would plausibly suggest a "meeting of the minds." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003). Although the Proposed Amended Complaint does assert that Katrin, Rabbi BenChaim, and ADA Schefflein all committed wrongful acts (see, e.g., Am. Compl. ¶ 56 (Rabbi BenChaim attempted to extort money from Plaintiff; id. ¶ 57 (Katrin falsely reported to the police that Plaintiff was offering her money to drop the rape charges); id. ¶ 58 (ADA Schefflein commenced prosecution against

Plaintiff knowing that he was innocent)), there is nothing in the pleading that "plausibly suggests that these acts were done in furtherance of an agreed upon conspiracy." Bermudez v. City of N.Y., No. 11-CV-0750, 2013 WL 593791, at *8 (S.D.N.Y. Feb. 14, 2013). Thus, as both alleged conspiracy claims would be futile, Plaintiff's motion to amend to assert Section 1983 claims against the Private Party Defendants is DENIED.

## CONCLUSION

For the foregoing reasons, the County Defendants' motion to dismiss is GRANTED, and Plaintiff's motion to amend is DENIED. Further, the Court declines to exercise supplemental jurisdiction over the remaining state law claims; therefore, all claims against Katrin, Dr. Simhaee, Rabbis Bakhsi and BenChaim, Ms. Paknoush, and Ms. Shaye are DISMISSED WITHOUT PREJUDICE. Accordingly, Rabbis Bakhsi and BenChaim's motions to dismiss are DENIED AS MOOT, and the Court's referral of Plaintiff's motion for a default judgment is VACATED and that motion is also DENIED AS MOOT.

The Clerk of the Court is directed to amend the caption to reflect the correct spelling of Dr. Simhaee's name and to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March ___27___, 2013
          Central Islip, NY